No. 26,767.

VERA MABLE DAVIS, *Appellant,* v. KARL L. DAVIS et al., *Appellees,* and W. C. STOUT, *Appellant.*

SYLLABUS BY THE COURT.

1. ESTATES—*Estates Tail—Nature and Creation.* A devise of land to a person for life and providing that upon the death of such person "the fee title shall vest and become the property of the children born of the body" of such person, constitutes an estate tail which the tenant in tail may transform into an estate in fee simple by a conveyance.

2. WILLS—*Charges Against Devisee—Effect on Devolution of Title.* Where by the terms of a will certain real property was devised to a person for life and the remainder in fee to the children of her body, and the maintenance, care and keeping of an incompetent person was made a personal charge on such devisee, with the proviso that if she should fail to discharge the obligation thus imposed the incompetent person, through a properly appointed trustee, should be entitled to the rents, income and profits of the land so devised for his support and maintenance, such obligation imposed on the devisee and the provision so made for the support of the incompetent had no effect upon the devolution of title to the property, and no effect on the legal character of the estate bestowed by the will of the testator.

3. WILLS — *Charge Impressed on Property — Effect — Equitable Enforcement.* The right of the incompetent to the rents, income and profits of the devised property for his support, on the possible future default of the devisee, is a potential burden on the estate which a court of equity will protect, if and when the necessity therefor may arise, but such right is a condition subsequent which does not suspend the vesting of title by operation of law.

4. ESTOPPEL—*Proceedings in Ignorance of Legal Rights.* The prior institution by plaintiff of divers *ex parte* proceedings in the district and probate courts, designed to serve the supposed interests of others than herself and not her own interest, at a time when she was ignorant of her legal rights, and which

Assignments, 5 C. J. p. 940 n. 12. Estates, 21 C. J. pp. 934 n. 32, 935 n. 63; 10 R. C. L. 658. Estoppel, 21 C. J. pp. 1135 n. 83, 1205 n. 26, 1230 n. 72. Wills, 40 Cyc. pp. 1599 n. 18, 2005 n. 95; L. R. A. 1917A, 617.

neither misled nor prejudiced anybody concerned therewith, did not operate to estop the plaintiff from maintaining this action.

5. ESTATES—*Estates Tail—Lease for Oil and Gas.* A tenant in tail has a right to lease the entailed property for gas and oil development for any term within her own tenure.

6. MINES AND MINERALS—*Oil and Gas Lease—Tenant in Tail—Equitable Estoppel to Deny Title in Assignee.* Where a tenant in tail, on the erroneous assumption that she held a mere life estate in certain real property, in her individual capacity and also as trustee and guardian for others, executed an oil and gas lease to a lessee who for a consideration assigned and warranted such lease to a third person, and the tenant in tail afterwards cut off the entailment by a conveyance of the property to her husband, following which she and her husband executed another lease to the same original lessee, who then challenged the validity of the lease he had theretofore assigned to the third party for a valuable consideration which the original lessee and assignor still retains, it is held that the assignee has a valid lease of the premises, good against both the plaintiff and the original lessee.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed June 12, 1926. Affirmed in part and reversed in part, with instructions.

*W. L. Cunningham, D. Arthur Walker,* both of Arkansas City, and *George S. Ramsey,* of Tulsa, Okla., for the appellant.

*Charles W. Roberts* and *L. D. Moore,* both of Winfield, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action involved the construction of a will and the interests of certain persons concerned therewith, and the rights of certain persons holding under leases executed by persons acting in different capacities under questioned authority derived from the will.

The controlling facts were these: One D. D. Kellogg, late of Cowley county, died testate on January 19, 1918. His will was duly probated; his estate was settled and its administration closed. By his will the testator devised a life estate to his wife, Anna D. Kellogg. She died in November, 1918. The further terms of the will, with which we are presently concerned, relate to the interests conferred by the will upon two granddaughters of the testator, Vera Mable Davis and Pearl Bessie Bursack, and of a certain incompetent kinsman, Willie Kellogg, for whose welfare the testator made provision as follows:

"4. It is my further will and bequest that after the death of my said wife, Anna D. Kellogg, that my granddaughter, Vera Mable Davis, shall have and hold the northwest quarter of section 29, township 32, range 3 east of the 6th

P. M., and also the 27 acres I now own in the northwest quarter of section 29, township 32, range 3 east, all in Cowley county, Kansas, for and during her natural life, subject, however, to the conditions and provision that she and my other granddaughter, Pearl Bessie Bursack, shall be charged with the care and keeping and maintenance of Willie, commonly known as Willie Kellogg, so long as he may live, and should my said granddaughters fail to suitably maintain and care for said Willie Kellogg, or should he become a public charge, it is my will that upon the petition of any person to the district court of Cowley county, Kansas, with proof of such fact, that said court shall appoint some suitable person as trustee for said Willie, commonly known as Willie Kellogg, and such trustee shall have the right to receive the rents, income and profits from said real estate, and maintain and provide for the said Willie, so long as he may live.

"5. It is my further will and bequest, that the fee title to the real estate described in the preceding paragraph of this my will, upon the death of my said granddaughter Vera Mable Davis, and upon the death of said Willie, commonly known as Willie Kellogg, shall vest and become the property of the children born of the body of the said Vera Mable Davis, share and share alike.

"6. It is my further will and bequest, that after the death of my said wife, Anna D. Kellogg, that my granddaughter, Pearl Bessie Bursack, shall have and hold the following-described real estate in Cowley county, Kansas, to wit, all the property I own in what was originally known as blocks 40 and 41 in the old townsite of Kellogg, also all the property I own in the northwest quarter of section 21, township 32 south, of range 3 east of the 6th P. M., together with the appurtenances for and during the natural life of my said granddaughter, subject, however, to the condition and provision that she and my other granddaughter, Vera Mable Davis, shall be charged with the care, keeping and maintenance of Willie, commonly known as Willie Kellogg, so long as he may live, and should my said granddaughters fail to suitably maintain, provide and care for said Willie Kellogg, or should he become a public charge, it is my will that upon the petition of any person to the district court of Cowley county, Kansas, with proof of such fact, that said court shall appoint some suitable person as trustee for said Willie, commonly known as Willie Kellogg, and such trustee shall have the right to receive the rents, income and profits from said real estate, and maintain and provide for the said Willie so long as he may live.

"7. It is my further will and bequest that the fee title to the real estate described in the preceding paragraph of this my last will and testament, upon the death of my said granddaughter, Pearl Bessie Bursack, and upon the death of the said Willie, commonly known as Willie Kellogg, shall vest and become the property of the children born of the body of the said Pearl Bursack, share and share alike."

Pursuant to these provisions of the will the granddaughters, Mrs. Davis and Mrs. Bursack, on the death of their grandmother, entered into the enjoyment of their estates; and Mrs. Davis, at least, has hitherto complied in good faith with the obligation imposed by her

Davis v. Davis.

grandfather on her and her sister Mrs. Bursack, to suitably main-
tain, keep and care for Willie Kellogg. What gave rise to the legal
questions which culminated in this lawsuit was a certain activity
in the demand for oil and gas leases in the neighborhood where the
lands thus devised were located. On the assumption that she held
a mere life estate in the 187 acres devised by paragraphs 4 and 5
of her grandfather's will, and that her three sons, Karl, Frank and
Herbert, held the remainder in fee, and on the further assumption
that Willie Kellogg held a present interest in the property, the
plaintiff, Mrs. Davis, set about the project of fixing up an accept-
able lease of the land for oil and gas development. To accomplish
that ·purpose, she· instituted an *ex parte* proceeding in the district
court, pursuant to which she was appointed trustee for Willie Kel-
logg (and trustee for her own unborn children), and in another pro-
ceeding instituted in the probate court she was appointed legal guard-
ian for her minor sons. Both courts granted her power to lease the
property for oil and gas exploration and development; and there-
upon she and her husband on their own behalf and her one adult
son Karl and his wife, and she, also, as guardian for her minor sons
Frank and Herbert and as trustee for Willie Kellogg, executed a
lease of the NW¼, sec. 29, T. 32 S., R. 3 E., to W. C. Stout, dated
December 21, 1923, for a fixed term ending February 9, 1928, and
conditionally thereafter.

Later, the nature of her grandfather's devise of the lands in sec-
tion 29-32-3 became the subject of critical examination of lawyers,
who concluded that the devise to Mrs. Davis from her grandfather
was that of an estate tail, and that the *ex parte* proceedings in the
district court and the guardianship proceeding in the probate court
were superfluous and ineffective. Proceeding on the latter conclu-
sion and advice of her counsel, Mrs. Davis executed a deed of gen-
eral warranty conveying the property to her husband, so as to break
the entailment. Her husband and she then executed a new lease of
the same premises (NW¼, 29-32-3) to the same grantee, W. C.
Stout. This lease was dated March 2, 1925, and like its prede-
cessor was to endure until February 9, 1928, and thereafter upon
conditions. , Following the execution of this lease and subject
thereto, on the same date, the husband of plaintiff reconveyed the
property by general warranty deed to Vera Mabel Davis, in fee
simple.·

All these facts are stated at elaborate length in the pleadings of

the litigants. The trial court appointed competent counsel as guardians *ad litem* for the minor children of Mrs. Davis, and also for Willie Kellogg, incompetent. No material issue of fact arose at the trial. The controversy turned chiefly upon the legal significance attaching to the language of the will which granted a devise for life to Mrs. Vera Mable Davis and then provided that upon the death of Vera and upon the death of Willie Kellogg "the fee title . . . shall vest and become the property of the children *born of the body of the said Vera Mable Davis,* share and share alike." [Italics ours.]

The judgment of the trial court was incorporated in a journal entry covering some fifteen pages, and included therein are informal findings of fact, some of which were that at the time of the probating of her grandfather's will, Vera Mable Davis had two children, Karl and Frank, and after its probating another child, Herbert, had been born to her, and at the time of the trial, July 7, 1925, she was forty-two years of age, and that Karl, Frank and Herbert were and are the sole and only children born of her body. Another finding reads:

"That pursuant to the terms of said will she and her sister, Pearl Bessie Bursack, have taken care of, kept and maintained Willie Kellogg up to the present time, and that the plaintiff is now caring for, keeping and maintaining him, and that within the last thirty days Pearl Bessie Bursack, defendant herein, has abandoned said Willie Kellogg, and is not at this time either caring for, keeping or maintaining said Willie Kellogg, or contributing thereto."

In its findings and judgment the trial court also took note of the *ex parte* proceedings which Vera Mable Davis had instituted and in which she had been appointed trustee for any possible issue which might yet be born to her, and trustee also for Willie Kellogg, and took note, also, of the guardianship proceedings in the probate court, and of the subsequent resignation of Mrs. Davis of such trusteeship and guardianship.

The trial court concluded that the will of her grandfather did not create an estate tail in Vera Mable Davis, and that she had no right to convert her interest in the devised property into an estate fee simple. Other features of the findings and judgment will be noted later in so far as they may need attention.

The errors assigned mainly question the correctness of the trial court's decision that the will of D. D. Kellogg did not create an estate tail in his granddaughter, Vera Mable Davis. Unless the pro-

vision for the maintenance, keep and care of Willie Kellogg, which the testator imposed upon his granddaughter, affects the question, the trial court's decision is manifestly incorrect. This court has repeatedly recognized that the erection of estates tail is not at variance with the public policy of this state concerning land tenures. In *Ewing v. Nesbitt*, 88 Kan. 708, 129 Pac. 1131, it was said:

"Estates tail resulting from judicial interpretation of the statute *de donis conditionalibus* (13 Edw. I, c. 1., June 28, 1285) as modified by subsequent statutes and judicial decisions were introduced into this country at the time of its colonization with other parts of English jurisprudence, and still exist in this state." (Syl. ¶ 1. See, also, *Busey v. Stockhoff*, 88 Kan. 729, 129 Pac. 1135; *Wiggins v. Powell*, 96 Kan. 478, 152 Pac. 765; *Bryant v. Flanner*, 99 Kan. 472, 162 Pac. 280; *Grossenbacher v. Spring*, 108 Kan. 397, 195 Pac. 884; *Gardner v. Anderson, Trustee*, 114 Kan. 778, 227 Pac. 743, and 116 Kan. 431, 227 Pac. 743; *Allen v. Pedder*, 119 Kan. 773, 241 Pac. 696; *Huls v. Gafford Lumber & Grain Co.*, 120 Kan. 209, 243 Pac. 306.)

And since this court has repeatedly explained how easily estates tail may be converted into estates in fee simple to serve the necessity or convenience of the parties concerned and on the initiative of those parties, the legislature has been content to refrain from transforming such estates into estates in fee simple by legislative decree —as so many states have done—following the lead of the state of Virginia in its act of October 7, 1776. (2 Va. Code [1887] § 2421.) Nor can there be any doubt that a devise of an estate to one person for life with the remainder in fee to the children of that life tenant's body does erect an estate tail in the life tenant. (*Ewing v. Nesbitt*, supra, and citations; *Gardner v. Anderson*, supra, and citations; *Allen v. Pedder*, supra, and citations.)

Does the provision in the will of D. D. Kellogg for the maintenance, care and keeping of Willie Kellogg operate to prevent the creation of an estate tail in Vera Mable Davis? No part of the title is vested in him. The cost of his maintenance, care and keeping is not primarily cast upon the estate. It is cast upon the granddaughters, individually and personally, and only upon their default does it devolve as a charge upon the estates respectively devised to them. So long as Vera Mable Davis continues to discharge the personal obligation as she has loyally done hitherto, the estate bestowed upon her and the children of her body is not affected in the slightest degree. And in the event she should make default (as apparently her sister has done, according to the findings of the trial court, but with which we have no concern in this lawsuit), the title to the

estate devised to Vera and the children of her body will not be affected thereby, but only "the rents, income and profits" thereof, during the lifetime of Willie Kellogg.

The conditional right of Willie Kellogg, through the instrumentality of a trustee, to the rents, income and profits, on the personal default of Vera, is a potential burden on the estate, but it is a condition subsequent which does not suspend the vesting of title—and will not defeat the title which is vested—in Vera for life, with remainder in fee to the children of her body.

In *Jackson v. Knapp,* 297 Ill. 213, it was said:

"An estate may be devised subject to a condition annexed to the devise whereby the estate shall commence, be enlarged, or defeated upon a performance or breach of the condition. The devise may be either upon a condition precedent or subsequent, and there is no technical form of words by which the character of the condition is to be determined. If the condition is precedent the estate does not vest unless and until the condition has been performed, but if it is subsequent the estate vests and upon a breach of the condition there is a right of reëntry by the person entitled, whether by limitation over, or, in the absence of such limitation, by the heir-at-law, who may take advantage of the breach of the condition. The distinction depends upon the connection in which the words are used, and in case of doubt the courts favor a construction making the condition subsequent. If the performance of the condition does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may as well be done after as before the vesting of the estate, or if from the nature of the act and the time required for its performance it is evident that the intention of the parties was that the estate should vest and the devisee perform the act after taking possession, the condition is subsequent." (p. 217. See, also, *Woodward v. Walling,* 31 Ia. 533; *Roberts v. Crume,* 173 Mo. 572; *Drace et al. v. Klinedinst, Appellant,* 275 Pa. St. 266, 25 A. L. R. 1521; *Ecroyd v. Coggeshall,* 21 R. I. 1, 79 A. S. R. 741 and note.)

So it seems to this court that while the potential interest of Willie Kellogg in the rents, income and profits of this estate is and will continue to be one which a court of equity will protect, if and when the need therefor may arise, that interest has no effect on the title (*Matter of Gray,* 27 N. D. 417, and note thereto in L. R. A. 1917 A, 617 *et seq.*), and so the rule of law which characterizes a devise of land to one person for life, with remainder in fee to the children of that person's body or bodily heirs, or issue, or similar designation which shows the purpose of the testator or grantor to avoid the effect of the statute of descents and to found a line of succession to his property of his own particular choosing, is applicable to the case at bar. (*Kolmer v. Miles et al.,* 270 Ill. 20.)

In *Wright v. Gaskill et al.*, 74 N. J. Eq. 742, the testator's will provided:

"I give and bequeath unto my nephew John Gaskill and my niece Elizabeth P. Gaskill, children of my brother William Gaskill, all the farm and plantation whereon I now reside, together with all the stock, farming implements, household goods and kitchen furniture at the time of my decease, to them or the survivor of them for and during the term of their natural life or lives of them for the said John and Elizabeth P. Gaskill, and after their death to their lawful issue, in fee simple absolute by their paying out of the rents, issues and profits of said farm and plantation aforesaid the sum of four hundred dollars yearly and every year unto my beloved wife Sarah Gaskill during the full term of her natural life in semi-annual payments, that is to say two hundred dollars every six months. And I do hereby order and direct that the farm and plantation aforesaid shall be held chargeable and subject to the payment of the aforesaid bequest made and given to my said wife, and that my said wife shall have the use and occupation of the said house upon the farm and plantation and all my household goods and kitchen furniture for her own use so long as she may remain upon said farm." (p. 743.)

The court said:

"We are dealing with a devise of land, and the words in the will give an estate to the testator's nephew and niece for their lives and the life of the survivor, and, after the death of the survivor, 'to their lawful issue, in fee simple absolute.' Certain conditions which were performed during the lives of both of the life tenants were charged upon the lands. This devise is of a life estate in the first devisees, with a remainder to their lineal descendants in indefinite succession, and creates an estate tail at common law." (p. 744.)

It is suggested, however, that appellant is estopped to claim an estate tail under the will by the *ex parte* proceedings she instituted in the district court for the appointment of a trustee for Willie Kellogg, and by the proceedings in the probate court for the appointment of a guardian for her minor children. To this there are at least two answers. Regardless of the question of estoppel, the plaintiff could not create in herself an estate tail. The testator made a certain testamentary disposition of his property which the law itself characterizes and denominates an estate tail. And no act of Vera Mable Davis was necessary to its creation. But as tenant in tail she has the right and privilege under our law to respect and preserve the entailment for the benefit of the children of her body, and she also has the right and privilege to break the entailment by a conveyance. Perhaps it is not too much to say that it is because estates tail can be so readily transformed into estates in fee simple that our legislature has permitted them to be created in this state. (*Gardner v. Anderson*, supra; 1 Washburn on Real Property, § 189.)    More-

over, estoppel by judgment or by participation in judicial proceedings does not arise unless the litigant sought to be estopped has assumed inconsistent attitudes in court, or where adverse parties or others have been misled to their prejudice by such diverse attitudes of the litigant. (21 C. J. 1135.) Here no person has been misled or prejudiced by appellant's attitude in the proceedings concerning the trusteeship for Willie Kellogg or in the guardianship proceedings in the probate court; nor in critical analysis can it be said that there is any real inconsistency in the attitude of appellant in those prior proceedings and her position here. In those proceedings she was particularly concerned with the possibility of legal claims which might arise in behalf of her unborn children, and those of Willie Kellogg, and in the guardianship matter in the probate court she was concerned with the possible claims or rights of her minor children. It was because of her commendable precautionary solicitude on behalf of these, and not because of selfish concern for her own rights nor in contention therefor, that prompted her course of conduct in those proceedings. Under substantially similar circumstances, where a person has acted in ignorance of his legal rights, but where no one was misled or prejudiced thereby, it is generally held that estoppel does not arise. (*Miller v. Ahrens,* 163 Fed. 870; *Wright v. De Groff,* 14 Mich. 164; *Meyer v. Meyer,* 106 Miss. 638; *Hays v. Bright,* 58 Tenn. 325; *Black Diamond Collieries v. Deal,* 150 Tenn. 474; *Estate of Brundage,* 185 Wis. 558; *Mullins v. Shrewsbury,* 60 W. Va. 694.)

A final matter urged on our attention in this appeal concerns the ruling of the trial court touching the validity of the leases of 1923 and 1925 granted by Vera Mable Davis and others. The trial court held the first lease valid, on the assumption that all the interest she had in the leased property was a naked life estate, and that the lease she made of it in her own behalf and in behalf of Willie Kellogg as trustee, and in behalf of her minor children as guardian, was the only proper and binding contract of lease which could have been effected. An erroneous course of reasoning does not always nor necessarily condemn the conclusion arrived at therefrom. (*Scattergood v. Martin,* 57 Kan. 450, 46 Pac. 933; *Saylor v. Crooker,* 97 Kan. 624, 156 Pac. 737; 2 Dec. Dig. pp. 51, 52.) The fact that precedent to the execution of the lease in 1923 there was a lot of superfluous and ineffective preliminaries—concerning a trusteeship for Willie Kellogg and the unborn, possible issue of Mrs. Davis, and a guard-

ianship for her minor children, and the sanction of the district court and the probate court to the execution of the lease—certainly did not vitiate that lease so far as the grant thereof by Vera Mable Davis individually was concerned. The tenant in tail could make a valid lease of the premises during the existence of her tenure. (*Gannon v. Peterson,* 193 Ill. 372, 55 L. R. A. 701; *Hillis v. Dils,* 53 Ind. App. 576, 581; Tiedeman on Real Property, 3d ed., § 36 *et seq.*) And, indeed, it is hardly possible to build up any rational theory on which it could be held that the lease of 1923 to Stout executed by Vera and husband individually (and by Vera as trustee and guardian) was invalid, but that such a lease executed by her husband and herself in 1925 to the same lessee was valid. Moreover, there is a manifest want of equity in Stout's attitude. He was the lessee of both leases. He sold the lease of 1923 to L. H. Wentz by an instrument in which he warranted himself to be its lawful owner and that he had good right to convey and assign it. Estoppel is a principle of equity which applies when it ought to apply, and certainly Stout is estopped to question the rights of his own grantee, who purchased those rights in reliance on Stout's written instrument of assignment with its representations and recitals, and when Stout, also, still retains the consideration paid therefor. So far as concerns the judgment of the district court in favor of L. H. Wentz, it is eminently correct, and it is affirmed. In other respects the judgment is reversed, and the cause is remanded with instructions to enter judgment for appellant, decreeing that the property devised to her for life with remainder in fee to the children of her body created an estate tail in appellant by operation of law, and decreeing further that the contingent interest of Willie Kellogg in such estate does not affect nor postpone the vesting of title and does not affect the title, but that the provision made in Willie Kellogg's behalf is a valid and binding condition subsequent which potentially runs with the land, to be enforced if and when the necessity therefor may arise, regardless of the status of the title and irrespective of who may be, *ad interim,* the title holder.

It is so ordered.